Daniel Feder (SBN 130867)
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com

Eric Lechtzin
**Edelson Lechtzin LLP**
411 S State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

Attorneys for Plaintiff,
SHAQUILLE STEWART ALEXANDER
and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHAQUILLE STEWART ALEXANDER, on behalf of himself and all others similarly situated<br><br>       Plaintiffs,<br><br>     v.<br><br>SAKS & COMPANY LLC; SAKS INCORPORATED<br><br>       Defendants. | Case No. 3:21-cv-02384 VC<br><br>**PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 7, 2022<br>Time: 2:30 pm<br>Judge: Hon. Vince Chhabria Ctrm.: 5<br><br>Filed: April 1, 2021 Trial Date: None |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 7, 2022, at 2:30 p.m. in Courtroom 5 before Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiff Shaquille Stewart Alexander ("Plaintiff") moves the Court for preliminary approval of the Class

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

Action Settlement Agreement (the "Settlement Agreement," the "Settlement," or the "SA," attached as Exhibit 1 to the accompanying Declaration of Eric Lechtzin) as to the California Class, and approval of the Settlement as to the Collective.

Plaintiff requests that this Court enter an Order (1) conditionally certifying the Rule 23 settlement class; (2) granting preliminary approval to the proposed Settlement; (3) appointing Plaintiff as class representative; (4) appointing Plaintiff's attorneys as Class Counsel; (5) appointing Simpluris, Inc. as Settlement Administrator; (6) approving the form, content, and method of distribution proposed by counsel to provide notice of the class settlement; (7) and scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and Service Award to the Named Plaintiff.

The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Eric Lechtzin, the Declaration of Daniel Feder, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion.

Plaintiff also submits a Proposed Order Granting Preliminary Approval of the Settlement with his moving papers.

By:    */s/ Eric Lechtzin*
Eric Lechtzin (SBN: 248958)
**Edelson Lechtzin LLP**
411 S State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

DANIEL FEDER
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………….v

I. INTRODUCTION ...................................................................................1

II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY ...........................1

    A.  The Pleadings…………………………………………………….. 1

    B.  Mediation and Informal Discovery………………………………… 2

III. TERMS OF THE SETTLEMENT....................................................................3

    A.  Basic Terms and Value of the Settlement………………………………3

    B.  Class and Collective Definitions………………………………………4

    C.  Allocations and Awards………………………………………………5

    D.  Scope of Release……………………………………………………6

    E.  Settlement Administration…………………………………………7

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CALIFORNIA CLASS AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE…………………………………………………………………7

    A.  The Court Should Grant Preliminary Approval of the Settlement as to the California Class……………………………………………………… 7

        1.  The California Class Meets the Requirements for Class Certification …………………………………………………8

            a.  The Class Satisfies the Requirements of Rule 23(a)……………………8

            b.  The Class Satisfies Predominance and Superiority……………………… 9

    B.  Plaintiff and the Collective Members are Similarly Situated………………… 11

    C.  The Settlement Should Be Preliminarily Approved as to the Class and Approved as to the Collective Because it is Fair, Reasonable and Adequate……………………….11

        1.  The terms of the Settlement are fair, reasonable and adequate ………………….12

        2.  The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel………………………………………...15

    D.  The Class Representative Enhancement Payments are Reasonable………………..15

    E.  The Requested Attorney's Fees and Costs are Reasonable…………………………16

    F.  The Proposed Notice of Settlement and Claims Process is Reasonable………………17

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

iii

G.  The Court Should Approve the Proposed Schedule…………………………………20

V. CONCLUSION………………………………………………………………………………20

The Law Office of Daniel Feder ◆ San Francisco, CA  94104
235 Montgomery Street, Suite 1019

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

# TABLE OF AUTHORITIES

**_Cases_**                                                                      **_Page(s)_**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................ …….10

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013)…….…….…….…….…….…….…….….17

*Carter v. Anderson Merchandisers, LP*,
  No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010)……………….15

*Chu v. Wells Fargo Investments, LLC*,
  Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N.D. Cal. Feb.16, 2011)………16

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...................................................... 12, 18

*Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)................................... 11

*EEOC v. Kovacevich "5" Farms*,
  No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ........................ 8

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................... 18

*Frlekin v. Apple Inc.*,
  8 Cal. 5th 1038 (2020) ...................................................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................... 7, 8, 9, 12

*Hartstein v. Hyatt Corp.*,
  No. CV-204874-DSFJPRX, 2021 WL 2497926 (C.D. Cal. Mar. 19, 2021) ........................ 14

*Heredia v. Eddie Bauer LLC*,
  No. 16-CV-06236-BLF, 2020 WL 1492710 (N.D. Cal. Mar. 27, 2020)................................... 13

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)……………………………………………….16

*In Re Armored Car Antitrust Litig.*,
    472 F. Supp. 1357 (N.D. Ga. 1979)……………………………………………14

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,
    289 F.R.D. 526 (N.D. Cal. 2012) )………………………………………..13

*In Re Four Seasons Secs. Laws Litig.*,
    58 F.R.D. 19 (W.D. Okla.1972)……………………………………………14

*In re Immune Response Secs. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)……………………………………...12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)……………………………………...15

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ……………………………………... …..12

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ……………………………………... 14

*Kilbourne v. Coca-Cola Co.*,
    No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)…………………13

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. 2009)……………………………………………16

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ……………………………………... 11

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ……………………………………... …..8

*Miller v. CEVA Logistics USA, Inc.*,
    No. 2:13-CV-01321-TLN, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015)…………………17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)……………………………………………………18

*Noyes v. Kelly Servs., Inc.*,
    2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)…………………17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ……………………………………... 11, 14

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder

235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

*Otey v. CrowdFlower, Inc.*,
   No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015).....................................11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).………………………………………………………………17

*Sherman v. Schneider Nat'l Carriers, Inc.*,
   No. CV 18-08609-AB (JCx), 2019 WL 3220585 (C.D. Cal. Mar. 6, 2019).…………….....14

*Soc. Sers. Union. Local 535 v. Cnty. of Santa Clara*
   609 F.2d 944 (9th Cir. 1979) ...........................................................................................9

*Vasquez v. Coast Valley Roofing*,
   266 F.R.D. 482 (E.D. Cal. 2010) .................................................................................. 16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).………………………………………………………16

*Tellez v. Ulta Salon, Cosms. & Fragrance, Inc.*,
   No. 18CV2480-CAB-LL, 2020 WL 619588 (S.D. Cal. Feb. 10, 2020).…………………15

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................................. 12, 15

*York v. Starbucks Corp.*,
   No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ...................... 13

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .......................................................................................... 10

**_Statutes_**

29 U.S.C. § 216(b)………………………………………………………………………..11

**_Rules_**

Fed. R. Civ. P. 23……………………………………………………………….. passim

**_Treatises_**

Conte, Newberg on Class Actions
§ 8.21 (3rd Ed.1992) ........................................................................................................ 19

Conte, Newberg on Class Actions
§ 8.39 (3rd Ed.1992) ........................................................................................................ 19

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement
§ 21.61 (4th ed. 2004) ................................................................................................... 7

Manual for Complex Litigation, Settlement Notice
§ 21.312 (4th ed. 2004) .......................................................................................... 18, 19

Posner, Economic Analysis of the Law (4th ed. 1992) ............................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

# I.    INTRODUCTION

After advocacy and negotiation, Plaintiff Alexander, individually and on behalf of all others similarly situated, and Defendants Saks & Company, LLC and Saks Incorporated (collectively "Defendants") entered into a proposed Settlement, memorialized in the proposed Class, Collective and Private Attorney General Act of 2004 ("PAGA") Action Settlement Agreement ("Settlement") to resolve claims brought on behalf of a subset of current or former non-exempt employees who worked for Defendants. Plaintiff seeks preliminary approval of the Settlement as to the California Class and approval of the Settlement as to the Collective (collectively, the "Class").

The Parties have resolved the claims of approximately 1,042 Class Members, for a total non-reversionary settlement of $375,000. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement is fair, reasonable, and adequate and in the best interests of the Class. The benefit of the proposed Settlement must be considered in the context of the risk that, in its absence, protracted litigation might lead to little or even no recovery on behalf of the proposed Class. Thus, the proposed Settlement merits preliminary approval.

# II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

## A.  The Pleadings

On April 1, 2021, Plaintiff filed his initial Complaint in the United States District Court for the Northern District of California, which asserted Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and California law claims. Dkt. No.1. Plaintiff alleges that Defendants' current and former non-exempt employees experience wage and hour violations. In particular, Plaintiff alleges that the employees experience pre-and post-shift off-the-clock work, including but not limited to waiting for and undergoing security inspections. *Id*. On May 19, 2021, Defendants filed a motion to dismiss under Rule 12(b)(2) and 12(b)(6) which was granted by the Court with leave to amend.

On September 17, 2021, Plaintiff filed the First Amended Complaint in this Action, adding

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

personal jurisdiction allegations concerning Saks Incorporated, as well as addressing the Court's

finding that Plaintiff had failed to sufficiently allege overtime violations under the FLSA. Dkt. No.

44. On October 1, 2022, Defendants filed a renewed motion to dismiss under Rule 12(b)(2) and

Rule 12(b)(6). Dkt. No. 45. The Parties completed briefing on the motions to dismiss, on

November 16, 2021. Dkt. Nos. 52, 55.

### B.  Mediation and Informal Discovery

The Parties agreed to participate in private mediation, and on November 23, 2021, the

Court granted the Parties' Stipulation for a Temporary Stay and Tolling of the Action to explore

the possibility of a global settlement in light of the pending settlements of two related actions

against Defendants involving wage and hour claims: *Alfreda Lewis v. Saks South Coast Leasehold,*

*LLC; Saks & Company, LLC*, Case No. 30-2020-01143164-CU-OE-CXC, currently pending in

Orange County Superior Court, and *Maxwell Esposito v. Saks & Company,* LLC, currently

pending at Los Angeles Superior Court – Santa Monica, Case No. 20SMCV01252. Declaration of

Eric Lechtzin ("Lechtzin Decl."), ¶ 5.

Plaintiff Lewis alleged violations of California Labor Code §§ 200-203, 204, 226(a), 226.7,

510, 512, 1174, 1194, and 2802 and provisions of the Industrial Wage Commission ("IWC") Wage

Order No. 7-2001. Plaintiff Esposito similarly alleged violations of California Labor Code §§ 200-

203, 204, 226(a), 226.7, 510, 512, 1174(d), 1182.12, 1194, 1197-1198, 2800, 2810.5, and 2802 and

provisions of the IWC Wage Order No. 7-2001.

At the time of the Parties' mediation, the parties in *Lewis* and *Esposito* already had signed a

Settlement Agreement on behalf of a class of "all Saks non-exempt employees who worked in

sales positions with the following job titles and associated codes: Sales Associate (SAL102 or

SAL104) and Brand Ambassador (SSTl00) at Saks Fifth Avenue Stores in California during the

Class Period and who do not timely and properly submit an election to Opt-Out." Lechtzin Decl., ¶

6.

For purposes of preparing for formal mediation with Mediator Paul Grossman, the Parties

engaged in informal pre-mediation discovery, which included Defendants' production of a

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ 235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

summary of pay data and dates of employment for Class Members, as well as Defendants' policies. Lechtzin Decl., ¶ 7. Plaintiff retained an expert who meticulously reviewed the materials and calculated a damage estimate based on Plaintiff's claims in the case. *Id.*, ¶ 12.

After Plaintiff and his expert prepared detailed damage analysis and the Parties submitted detailed mediation statements, which included arguments and analyses of the strengths and weaknesses of their respective positions, the Parties attended a full day mediation on February 23, 2022 with Mr. Grossman, a highly respected mediator. *Id.*, ¶ 8. The Parties were successful in reaching a settlement in principle on February 23, 2022, the terms of which were set forth in a Mediator's Proposal. *Id.* at The Parties have since worked on finalizing the terms of this Settlement Agreement and corresponding documentation. The Settlement Agreement was fully executed on June 1, 2022. *Id.*, ¶ 9.

## III.    TERMS OF THE SETTLEMENT

### A.    Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Total Settlement Amount of $375,000 to settle all aspects of the case. Settlement Agreement ("SA"), ¶ 44 . The "Net Settlement Amount," which is the amount available to pay settlement awards to Class Members, is defined as the amount remaining after the payment of the Class Counsel Fee and Expense Award (fees of up to 1/3 of the Total Settlement Amount, or $124,987.50), plus costs not to exceed $30,000; any service award to the Plaintiff in recognition of his effort and work (up to $5,000); Settlement Administrator's fees and costs currently projected to be approximately $14,000; and the PAGA funds of $20,000, of which $15,000 in payment will be made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA, and $5,000 will go to PAGA Cohort Members as approved by the Court.[1] *Id.* at ¶ 24

The Total Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Plaintiff's Counsel. Plaintiff's

---

[1] Eighty percent (80%) of the Net Settlement Amount will be allocated as penalties and interest, and twenty percent (20%) of the Net Settlement Amount will be allocated as wages.

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

Counsel based their damages analysis and settlement negotiations on discovery, including the payroll data. Lechtzin Decl., ¶ 12. Utilizing an expert, Plaintiff's Counsel analyzed the data for all of these employees, which was then used in conjunction with amounts of unpaid time to determine estimated damages for unpaid wages and overtime violations.[2]

**B.     Class and Collective Definitions**

An individual is a member of the Class under the proposed Settlement if he or she belongs to any of the following:

- The "California Class" means all current or former non-exempt employees who worked for Saks & Company, LLC (the "Company"), at a Saks Fifth Avenue retail store in California, during the Class Period and excludes all individuals identified by and included in the settlement class(es), unless they opt-out, as approved by the court(s) in *Alfreda Lewis v. Saks South Coast Leasehold, LLC; Saks & Company, LLC*, Case No. 30-2020-01143164-CU-OE-CXC, currently pending in California Superior Court, County of Orange and *Maxwell Esposito v. Saks & Company, LLC*, currently pending in California Superior Court, County of Los Angeles - Santa Monica, Case No. 20SMCV01252 ("Lewis/ Esposito Settlement").  However, individuals who are members of the Lewis/Esposito Settlement but who also worked for the Company at a Saks Fifth Avenue retail store in California during the Class Period in a role other than Sales Associate (SAL 102 or 104) and Brand Ambassador (SST100), may participate in both settlements. The California Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

- The "Collective" means all current or former non-exempt employees who worked for Saks & Company, LLC (the "Company"), at a Saks Fifth Avenue retail store in

---

[2] For purposes of the Settlement, Plaintiff agreed to file a Second Amended Complaint in the Action to add a claim under the PAGA for civil penalties for the same underlying alleged violations of the California Labor Code as set forth in Plaintiff's First Amended Complaint. Defendants will not oppose the Second Amended Complaint or be required to respond as part of the settlement approval process. SA, ¶ 50. The Second Amended Complaint that Plaintiff will file in the Action, is attached to the Settlement as Exhibit B.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA  94104

California, during the Collective Period and excludes all individuals identified by and included in the Lewis/ Esposito Settlement.  However, individuals who are members of the Lewis/Esposito Settlement but who also worked for the Company at a Saks Fifth Avenue retail store in California during the Collective Period in a role other than Sales Associate (SAL 102 or 104) and Brand Ambassador (SST100), may participate in both settlements.[3]

## C.    Allocation and Awards

Class Members will each receive a settlement award check without the need to submit a claim form. SA, ¶ 65(c). Each Class Member's settlement share will be determined based on the total number of weeks that the respective Class Member worked for Defendants during the limitations period. SA, ¶ 65(a), (b). Specifically, the total workweeks for all Class Members during the Class period will be divided into the Net Settlement Sum to calculate a workweek value. The Workweek value will then be multiplied by each Settlement Class Member's total number of workweeks to determine each Settlement Class Member's Individual Settlement Award, after deducting any employee side tax withholdings or deductions. *Id*.

Class Members who worked in California at any time during the period from April 1, 2020 through preliminary approval of the Settlement Agreement will also receive a pro rata portion of the PAGA Fund Amount ($5,000), based on the number of workweeks they were employed by Defendants from April 1, 2020 through preliminary approval of the Settlement Agreement. SA, at ¶ 66(a), (b)

The Settlement Notice will provide the estimated pre-tax amount of the Class Member's Individual Settlement Award and number of workweeks for each Class Member, assuming full participation in the settlement. SA, ¶ 61(a). Settlement Award and eligibility determinations will be based on employee workweek information that Defendants will provide to the Settlement Administrator. The Settlement Administrator's determination – not Defendants – will be binding.

---

[3] The Settlement Agreement also includes a PAGA Cohort, which comprises Class Members who worked during the period of April 1, 2020 through preliminary approval of the Settlement.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

SA, ¶ 75.

Settlement Awards will be paid to Class Members and PAGA Cohorts by the Settlement Administrator within ten calendar days of receipt of the Total Settlement Amount. SA, ¶ 79. Any uncashed check funds remaining after the checkcashing deadline will be paid to one or more agreed *cy pres* recipients approved by the Court. SA, ¶ 81. The Parties have proposed the University of California Berkeley's Institute for Research on Labor and Employment, which promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities, and the Trevor Project, the world's largest suicide prevention and crisis intervention organization for LGBTQ (lesbian, gay, bisexual, transgender, queer, and questioning) young people, as the *cy pres* recipients, subject to the Court's approval. Upon completion of administration of the Settlement, the Settlement Administrator shall provide a written declaration under oath to certify such completion to the Court and counsel for all Parties as ordered by the Court. SA, ¶ 82.

### D.     Scope of Release

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit that were or could have been asserted in Plaintiff's complaints based on the facts alleged in support of Plaintiffs' specific causes of action.[4] SA, ¶ 36. Upon the Effective Date, Class Members will be deemed to have released such claims based on California law. Additionally, only those Class Members who cash or deposit their Settlement Award check will release their FLSA claims. SA, ¶ 65(d).

After the Effective Date, Plaintiff, on behalf of himself, the State of California, and all PAGA Cohort Members, will have released the Released Parties from all claims for civil penalties under Labor Code sections 2698, *et seq*., with respect to the Released Claims, as set forth in the PAGA Release, for the entirety of PAGA Period. SA, ¶ 58.

---

[4] With respect to Plaintiff individually, the Release excludes all claims pled in the separate action entitled *Alexander v. Saks & Company, LLC*, Superior Court of California, County of San Francisco, Action No. CGC-20-587873, because Plaintiff has settled and will release all such claims in a separate settlement agreement. *Id*.

*The Law Office of Daniel Feder ◆ San Francisco, CA 94104*
*235 Montgomery Street, Suite 1019*

**E.    Settlement Administration**

The Parties have agreed to use Simpluris, Inc. whose administration costs are currently projected by the Parties to be approximately $14,000, to administer the Settlement. SA, ¶¶ 2, 40; Lechtzin Decl., ¶¶ 22-23 (describing settlement administration process consistent with the Northern District's Procedural Guidance for Class Action Settlements). The Settlement Administrator will distribute the Notice of Settlement via mail, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, and prepare and issue all disbursements to Class Members, the LWDA, the Class Representative, Class Counsel, and applicable state, and federal tax authorities. SA, ¶ 60(h). The Settlement Administrator is also responsible for the timely preparation and filing of all tax returns and reporting, and will make timely and accurate payment of any and all necessary taxes and withholdings. SA, ¶ 71. The Settlement Administrator will establish a settlement website that will allow Class Members to view the Class Notice (in generic form), the Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement. SA, Ex. A. The Settlement Administrator will also establish a toll-free call center for telephone inquiries from Class Members. *Id*.

**IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CALIFORNIA CLASS AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE**

**A.    The Court Should Grant Preliminary Approval of the Settlement as to the California Class**

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which any objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v.*

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

*Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminarily approve the Settlement as to the California Class.

### 1.  The California Class Meets the Requirements for Class Certification

The Court must first determine that the proposed class satisfies the criteria set out in Fed. R. Civ. P.  23(a), specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and fairly represent the interests of the class. *Hanlon*, 150 F.3d at 1019-20 (9th Cir. 1998). Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (b)(2), or (b)(3). *Id*. at 1027. Here, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

### a.  The Class Satisfies the Requirements of Rule 23(a)

The proposed California Class satisfies all the requirements of Rule 23(a).

Numerosity: The California Class is sufficiently numerous that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See*, *e.g.*, *EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed Class has approximately 1,042 members, and easily meets this standard. SA, ¶ 3.

Commonality: Commonality is satisfied because there "are questions of law and fact common" to the proposed California Class. *See Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012). Here, as discussed in greater detail below in the discussion of predominance, there are a number of questions that can be resolved with respect to the entire class.

8

1    *See infra.*

2      Typicality: The typicality requirement of Fed. R. Civ. P. 23 (a)(3) is satisfied because

3    Plaintiff's claims are typical of the claims asserted on behalf of the California Class. Typicality is

4    established if representative claims are "reasonably co-extensive with those of absent class

5    members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff's claims

6    arise out of the same factual and legal circumstances as the claims of other California Class

7    Members: like all Class Members, the Named Plaintiff was subject to the same alleged illegal

8    policies and practices.

9      Adequacy: Plaintiff has fairly and adequately protected the interests of the class and will

10   continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the named

11   plaintiffs and their counsel do not have conflicts of interest with other class members, and the

12   named plaintiffs and their counsel will vigorously prosecute the interests of the class. *Hanlon*, 150

13   F.3d at 1020; *Soc. Sers. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir.

14   1979). Here, Plaintiff shares an interest to prosecute the claims on behalf of himself and the

15   California Class, has vigorously prosecuted the claims, and has no conflicts of interest with Class

16   Members. In addition, Class Counsel has substantial experience in class action and employment

17   litigation, including wage and hour class actions. Lechtzin Decl. ¶ 2; Feder Decl. ¶ 2.

18               **b.     The Class Satisfies Predominance and Superiority**

19      The California Class satisfies the requirements of Fed. R. Civ. P. 23 (b)(3), because

20   common questions "predominate over any questions affecting only individual members," and class

21   resolution is "superior to other available methods for the fair and efficient adjudication of the

22   controversy." First, the California Class satisfies the predominance requirement, which examines

23   whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."

24   *Hanlon*, 150 F.3d at 1022. Here, Plaintiff contends the common questions raised in this action

25   predominate over any individualized questions. The Class is cohesive because resolution of

26   Plaintiff's claims hinge on the uniform policies and practices of Defendants. As a result, the

27   resolution of these alleged class claims would be achieved through the use of common forms of

28

The Law Office of Daniel Feder  ◆  San Francisco, CA  94104

235 Montgomery Street, Suite 1019

9

proof, such as Defendants' uniform policies and practices.[5]

Further, Plaintiff contends the class action mechanism is a superior method of adjudication compared to the prospect of a multitude of individual lawsuits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the Class Members would not have a strong interest in controlling their individual claims. The action involves hundreds of workers with very similar, but relatively small, claims for monetary injury. If the Class Members proceeded on their claims as individuals, their many individual lawsuits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation to an extent that would never be required in a class proceeding. Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability "is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the California Class for settlement purposes.

---

[5] Although the amount of time worked off-the-clock may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

The Law Office of Daniel Feder ◆ 235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

**B.    Plaintiff and the Collective Members are Similarly Situated**

In the FLSA context, court approval is required for FLSA collective settlements, but the "Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (citing *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015)). Most courts in this Circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at *4. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues…that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Otey*, 2015 WL 6091741, at *4. The non-exempt employees were subject to a common practice or policy that violated the FLSA. During the course of the litigation, 3 non-exempt employees filed opt-in forms to join the Collective, and there are approximately 1,000 Collective Members. The Court should find that Plaintiff and the Collective Members are similarly situated for purposes of preliminary settlement approval.

**C.    The Settlement Should Be Preliminarily Approved as to the Class and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate**

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at *4. Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1.    The terms of the Settlement are fair, reasonable, and adequate

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement. The Settlement was reached after extensive investigation and research, thorough calculations and risk evaluation, informal exchanges of data and documents—including an evaluation of Class Members' payroll data—and an exchange of information required to evaluate potential defenses and damages. With the information produced by Defendants, and additional information provided by Defendants during the mediation, it was sufficient to permit Plaintiff's counsel to adequately evaluate the Settlement. And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See*, *e.g.*, *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Plaintiff calculated that unpaid wages owed, based on the assumption of 50 minutes off the clock in each workweek, would total approximately $4.0 million for Settlement Class Members. The *maximum* potential damages and penalties available using these favorable assumptions for the putative class were calculated to be $4,015,596 for unpaid work hours,[6] $3,088,188 for waiting

---

[6] Plaintiff's damages also included an additional $3,435,135 in damages under the assumption that Plaintiff and Class members were not paid for daily meetings. However, Defendants provided evidence at the meeting that Plaintiff clocked in prior to the start of the daily meetings.

The Law Office of Daniel Feder    235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

time penalties, and $2,573,300 for wage statement claims, plus PAGA penalties (which would be minimal, based on the fact that the Court might deem them duplicative of class action damages). Lechtzin Decl., ¶ 12. The average recovery is approximately $174 per Class Member (this amount divides the net recovery by total number of Class Members). Lechtzin Decl., ¶ 20. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

Based on documents and information produced by Defendants in discovery, in preparation for mediation and during settlement negotiations, Plaintiff's counsel estimated the maximum potential liability that may be owed to the putative class, assuming Plaintiff and the Class were able to survive Defendants' motion to dismiss, obtain an order certifying the class, survive summary judgment, and prove at trial that Saks was liable during the class period. However, this figure is subject to substantial discount for multiple reasons. First, Defendants contend that their policies and practices have not and do not violate any laws and further contend that their compensation practices and wage statement policies comply with all aspects of California and federal law. Lechtzin Decl., ¶ 15. Further, among other things, Defendants presented video evidence during the mediation, which showed that the security checks, which are the subject of this action, lasted less than a minute. *Id.*, ¶ 16.  Defendants also raised challenges to Plaintiff's claims proceeding on a class or manageable representative basis given the inherent individualized inquires required to adjudicate off-the-clock claims.[7] Additionally, Plaintiff's derivative claims are subject to a good faith argument and, as such, the claims may not be recoverable. Indeed, *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020), which held that time spent undergoing the security clearance could be compensable time under California law, was not decided until 2020, which is after Plaintiff was no

---

[7] Off-the-clock claims are difficult to certify for class treatment, given that the nature and amount of the off-the-clock work may vary based on the individualized circumstances of the worker. *See, e.g.*, *Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 1492710, at *1 (N.D. Cal. Mar. 27, 2020) (noting decertification of the class based on variations in the employees' experiences regarding exit inspections);.*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011)

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

longer employed by Saks. Moreover, Defendants asserted that Plaintiff's wage statement claim would fail based on caselaw dismissing such claims where the wage statements accurately reflect the actual amount paid. *See e.g.*, *Hartstein v. Hyatt Corp.*, No. CV204874DSFJPRX, 2021 WL 2497926, at *4 (C.D. Cal. Mar. 19, 2021) (dismissing wage statement claims as an impermissible double recovery where the plaintiff did not allege the wage statements inaccurately documented the amount of money she actually received); *Sherman v. Schneider Nat'l Carriers, Inc.*, No. CV 18-08609-AB (JCx), 2019 WL 3220585, at *5 (C.D. Cal. Mar. 6, 2019) ("Plaintiff's opposition implicitly concedes that the wage statements accurately stated the wages actually paid. Accordingly, the wage statements do not violate § 226(a) even if the amount paid was incorrect.").

While Plaintiff believes in the strength of his claims, the risks to Class Members of continued litigation were significant. This action was poised for a contentious pre-certification law and motion work which would have consumed a substantial amount of attorney time, court time, and depending on the motion and the result, potential appeals. Had the Parties not settled, the litigation would likely have been risky, protracted, and costly. *Id.*, ¶ 18. The Parties would also have had to engage in additional formal discovery (assuming Plaintiff's complaint survived Defendants' motion to dismiss), brief a class certification motion, as well as a conditional certification motion (and possible brief in opposition of decertification), followed by potential summary judgment, *Daubert* motions, motions *in limine*, and then trial. Each stage would have added risk and necessarily imposed delay before relief could be provided to the Class. By settling now, the remedy to Class Members for alleged labor code violations becomes imminently available.

Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See*, *e.g.*, *Officers for Justice*, 688 F.2d at 623; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972)

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ San Francisco, CA  94104
235 Montgomery Street, Suite 1019

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

(approving 8% of damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).  Moreover, at least one other court has approved a similar settlement for cases with similar claims and defenses. *See Tellez v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 18CV2480-CAB-LL, 2020 WL 619588, at *6 (S.D. Cal. Feb. 10, 2020) (granting approval of settlement in which class members received an average estimated payment of approximately $44 for claims including failure to pay overtime, failure to timely pay wages and failure to provide accurate wage statements, and defendant had similar defenses to those at issue here).

### 2. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Wren*, 2011 WL 1230826, at *14 (approving settlement reached through arms-length negotiations supervised by an experienced mediator). Furthermore, where counsel is well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10 ("Class Counsel's favorable opinion of the terms of the settlement supports approval…"); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Lechtzin Decl., ¶ 21. The Parties participated in a full day mediation before Paul Grossman, who is a skilled mediator with many years of experience mediating employment matters. *Id*. The Parties then spent several months negotiating the long form settlement agreement, with back-and-forth correspondence related to the terms and details of the Settlement. *Id*.

### D. The Class Representative Enhancement Payments are Reasonable

Here Plaintiff seeks an enhancement payment that may not exceed $5,000. Lechtzin Decl., ¶ 24. This amount is reasonable given the risks undertaken by Plaintiff due to his involvement in

the Action. Plaintiff was actively involved in the litigation of this Action, expending considerable effort in advancing the interests of the Class. Plaintiff provided information to counsel before the filing of this matter; and regularly conferred with his counsel regarding the case whenever questions arose. *Id.* Plaintiff also faces significant stigma for having filed a federal class action because such records are available online to prospective employers who conduct an online search on a job applicant. This, in addition to Plaintiff's significant contributions to this case, justifies the $5,000 enhancement sought on his behalf.

### E.   The Requested Attorney's Fees and Costs are Reasonable

In their fee motion to be submitted with the final approval papers, Plaintiff's counsel will request up to one-third of the Total Settlement Amount, or $124,987.50, plus costs not to exceed $30,000. Plaintiff's counsel will provide their updated lodestar information with their fee motion, which will demonstrate the reasonableness of Plaintiff's Counsel's rates. *See* Lechtzin Decl., ¶ 28 (providing current lodestar and costs consistent with the Northern District's Procedural Guidance for Class Action Settlements); Feder Decl., ¶¶ 4-5; *see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.[8] However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D.at 491 (*citing Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in wage and

---

[8] *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) *see also Chu v. Wells Fargo Investments, LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb.16, 2011) (percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant).

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ 235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

hour class actions.[9]

In this case, such an upward adjustment is warranted. There was no guarantee of compensation or reimbursement. Lechtzin Decl., ¶ 29. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id*. These risks were front and center. *Id*. The challenges that Class Counsel had to confront and the risks they had to fully on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases. *See*, *e.g.*, *Noyes v. Kelly Servs.*, Inc., 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); *Posner*, ECONOMIC ANALYSIS OF THE LAW, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed... because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans")

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly where, like in the case at bar, the result is uncertain. This does not result in any windfall. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.*, if the client paid the bill on a monthly basis). *Id*., ¶ 30

For these reasons, Class Counsel respectfully submits that a fee in the amount of one-third of the total recovery is appropriate. *Id*., ¶ 31. Class Counsel also requests reimbursement for their litigation costs.

**F.    The Proposed Notice of Settlement and Claims Process is Reasonable**

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985);

---

[9] *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) (approving attorneys' fee award of 1/3 of the settlement fund); *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million.").

17

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

1    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not

2    guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise

3    interested parties of the pendency of the action and afford them an opportunity to present their

4    objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *Silber v.*

5    *Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally

6    describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

7    investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

8        The Notice of Settlement, attached as Exhibit A to the Settlement Agreement ("Notice"),

9    and manner of distribution negotiated and agreed upon by the Parties are "the best notice

10    practicable." Fed.R.Civ.P. 23(c)(2)(B); *see* Procedural Guidance for Class Action Settlements

11    (updated Dec. 5, 2018). All Class Members have been identified and the Notice will be mailed

12    directly to each Class Member. Lechtzin Decl., ¶ 32. The proposed Notice is clear and

13    straightforward, and provides information on the nature of the action and the proposed Class, the

14    terms and provisions of the Settlement, and the monetary awards that the Settlement will provide.

15    *See Id.*, Ex. A. In addition, the Parties will provide a settlement website that provides a copy of the

16    Notice, the Settlement Agreement, and other case related documents and contact information. *Id*., ¶

17    32.

18        The proposed class Notice fulfills the requirement of neutrality in class notices. *Id*., ¶ 33.

19    *See* Conte, NEWBERG ON CLASS ACTIONS, § 8.39 (3rd Ed. 1992). It summarizes the

20    proceedings necessary to provide context for the Settlement Agreement and summarizes the terms

21    and conditions of the Settlement, including an explanation of how the settlement amount will be

22    allocated between the Named Plaintiff, Class Counsel, the Settlement Administrator, and the Class

23    Members, in an informative, coherent and easy-to-understand manner, all in compliance with the

24    Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate

25    description of the terms of the settlement." Lechtzin Decl., ¶ 33. MANUAL FOR COMPLEX

26    LITIGATION, Settlement Notice, § 21.312 (4th ed. 2004).

27        The proposed class Notice clearly explains the procedures and deadlines for requesting

28

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019 ◆

1   exclusion from the Settlement, objecting to the Settlement, the consequences of taking or

2   foregoing the various options available to Class Members, and the date, time and place of the Final

3   Approval Hearing. Lechtzin Decl., ¶ 34.  Pursuant to Rule 23(h), the proposed Notice also sets

4   forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the

5   procedure by which Class Counsel will apply for them. *Id*. The Notice states clearly that the

6   Settlement does not constitute an admission of liability by Defendants and that the final settlement

7   approval decision has yet to be made. *Id*., ¶ 35.  Accordingly, the Notice complies with the

8   standards of fairness, completeness, and neutrality required of a settlement class notice

9   disseminated under authority of the Court. *See* Conte, NEWBERG ON CLASS ACTIONS, §§

10  8.21 and 8.39 (3rd Ed. 1992); MANUAL FOR COMPLEX LITIGATION, Certification Notice, §

11  21.311; Settlement Notice, § 21.312 (4th ed. 2004).

12      Furthermore, reasonable steps will be taken to ensure that all Class Members receive the

13  Notice. Before mailing, Defendants will provide to the Settlement Administrator the names, last

14  known addresses, and social security numbers of each Class Member, along with the applicable

15  number(s) of Workweeks for calculating each Class members respective settlement share. Lechtzin

16  Decl., ¶ 36. The Notice will be sent by U.S. Mail. The Settlement Administrator will make

17  reasonable efforts to update the contact information in the database using public and private skip

18  tracing methods. Within 10 calendar days of receipt of the Class List from Defendants, the

19  Settlement Administrator will mail the Notices to each Class Member. *Id*.

20      With respect to Notices returned as undeliverable, the Settlement Administrator will re-

21  mail any Notices returned to the Settlement Administrator with a forwarding address following

22  receipt of the returned mail. *Id*., ¶ 37. If any Notice is returned to the Settlement Administrator

23  without a forwarding address, the Settlement Administrator will undertake one address search

24  using skip tracing, and will promptly re-mail the Notice to any newly found address. *Id*.

25      Class Members will have 60 days from the mailing of the Notices to opt-out or object to the

26  Settlement, consistent with the Northern District's Procedural Guidance for Class Action

27  Settlements. Any Class Member who does not submit a timely request to exclude themselves from

28

the Settlement will be deemed a Participating Individual whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. *Id.*, ¶ 38.

Because the proposed Notice clearly and concisely describes the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notices will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notices should be preliminarily approved.

**G.    The Court Should Approve the Proposed Schedule**.

Plaintiff respectfully requests this Court approve the following schedule

1.  Deadline for Defendants to pay the Total Settlement Amount in the QSF: Within fourteen (14) business days of the Effective Date.

2.  Deadline for Defendants to provide Settlement Administrator with the Class List:  Within fourteen (14) business days after the Court's preliminary approval of the Settlement.

3.  Deadline for Settlement Administrator to mail the Notice of Settlement to Class Members: Within ten (10) calendar days after the Settlement Administrator receives the Class List.

4.  Deadline for Class Members to postmark requests to opt-out or file objections to the Settlement ("Notice Deadline"): Sixty (60) days after Notice of Settlement is mailed.

5.  Deadline for filing of Final Approval Motion: At least forty (40) days before Final Approval Hearing.

6.  Final Approval Hearing: At least thirty (30) days after Notice Deadline.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement, in accordance with the schedule set forth herein

Date: June 2, 2022                          Respectfully Submitted,

                                            */s/ Eric Lechtzin*
                                            Eric Lechtzin (SBN: 248958)
                                            **Edelson Lechtzin LLP**
                                            411 S State Street, Suite N-300
                                            Newtown, PA 18940

Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

DANIEL FEDER
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT