Daniel Feder (SBN 130867)
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com

Eric Lechtzin (SBN 248958)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

Attorneys for Plaintiff,
SHAQUILLE STEWART ALEXANDER
and all others similarly situated

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAQUILLE STEWART ALEXANDER, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>SAKS & COMPANY LLC; SAKS INCORPORATED<br><br>Defendants. | Case No. 4:21-cv-02384 VC<br><br>**PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 17, 2022<br>Time: 2:30 pm<br>Judge: Hon. Vince Chhabria<br>Ctrm.: 5<br><br>Filed: April 1, 2021<br>Trial Date: None |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on November 17, 2022, at 2:30 p.m. in Courtroom 5

before Hon. Vince Chhabria of the United States District Court, Northern District of California,

Plaintiff Shaquille Stewart Alexander ("Plaintiff") moves the Court for final approval of the Class

Action Settlement Agreement (the "Settlement Agreement," the "Settlement," or the "SA").[1]

Plaintiff requests that this Court enter an Order (1) certifying the Rule 23 settlement class; (2) granting final approval to the proposed Settlement; (3) finally approving Plaintiff as class representative; (4) finally approving Plaintiff's attorneys as Class Counsel; (5) approving payment of $14,000 from the Settlement to the Settlement Administrator, Simpluris, Inc., ("Simpluris") as compensation for administering the Settlement; (6) finally approving the following implementation schedule, as set forth below:

| | |
|---|---|
| Effective Date | The last date of: (a) 31 days after Final Approval by the Court and issuance of a Final Order and Judgment by the Court if no appeal, review or writ petition has been filed; or (b) if there are Objections to the Settlement which are not withdrawn, and if an appeal, review or writ is not sought from the judgment, the day after the time for appeal of the entry of Judgment has expired; or (c) if an appeal, review or writ is sought from the judgment, the day after the Judgment is affirmed or the appeal, review or writ is dismissed or denied, and the Judgment is no longer subject to further judicial review. |
| Deadline for Saks to pay the Total Settlement Amount into the Qualified Settlement Fund | Within fourteen (14) business days of the Effective Date |
| Deadline for Simpluris to make payments for attorneys' fees and cost, service awards, Class Member Settlement Awards, and LWDA Payment | Within ten (10) calendar days of receipt of the Total Settlement Amount |
| Check-cashing deadline | 180 days after issuance |
| Deadline for Simpluris to provide a written declaration to certify completion to the Court and counsel for all Parties as ordered by the Court | Upon completion of administration of the Settlement |
| Deadline for Simpluris to release the 10 percent holdback of the attorneys' fees award to Class Counsel | As soon as practicable following completion of the distribution process and filing of the Post-Distribution Accounting with the Court |

and;

(7) entering a final judgment with the terms of the Settlement.

---

[1] The Settlement was previously filed at ECF 68-2. The Settlement was already preliminarily approved by this Court on August 1, 2022. *See* ECF 79.

Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Eric Lechtzin, the Declaration of Daniel Feder, the Declaration of Stephen Gomez, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion.

Plaintiff also submits a Proposed Order Granting Final Approval of the Settlement and a Proposed Judgment with his moving papers.

By:    */s/ Eric Lechtzin*
Eric Lechtzin (SBN: 248958)
**EDELSON LECHTZIN LLP**
411 S State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

DANIEL FEDER
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Law Office of Daniel Feder

235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………v

I. INTRODUCTION ……………………………………………………………………1

II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY ……………………1

    A.  The Pleadings……………………………………………………………………… 1

    B.  Mediation and Informal Discovery……………………………………………..2

    C.  Preliminary Approval of the Settlement…………………………………......3

    D.  Notice of Settlement and Response of Class Members……………………….4

    E.  Final Approval of the Settlement ……………………………………………4

III. TERMS OF THE SETTLEMENT……………………………………………………5

    A.  Basic Terms and Value of the Settlement…………………………………………5

    B.  Class and Collective Definitions………………………………………………5

    C.  Allocations and Awards………………………………………………………6

    D.  Scope of Release………………………………………………………………..8

IV. ARGUMENT………………………………………………………………………8

    A.  The Court Should Grant Final Approval of the Settlement ……………………..8

        1.  The terms of the Settlement are fair, reasonable and adequate ……………….....9

        2.  The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel…………………………………...13

        3.  Class Members approve of the Settlement……………………………………13

    B.  The Best Practicable Notice was Provided to the Class Members in Accordance with the Process Approved by the Court………………………14

    C.  The Class Representative Service Award is Reasonable………………………14

    D.  The Requested Attorney's Fees and Expenses are Reasonable………………… 15

    E.  The Class Meets the Requirements for Class Certification …………………………………………………………15

        1.  The Class Satisfies the Requirements of Rule 23(a)………………………15

        2.  The Class Satisfies Predominance and Superiority…………………………16

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

V. CONCLUSION.................................................................................18

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

***Cases***                                                                                                    ***Page(s)***

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)……………………………………………………………………..17

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)…………………………………………………………..17

*Carter v. Anderson Merchandisers, LP*,
   No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010)………………13

*Cody v. Hillard*,
   88 F.Supp.2d 1049 (D.S.D. 2000) ......................................... …………………..13

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................... 9

*Eddings v. Health Net, Inc.*,
   No. CV 10-1744-JST RZX, 2013 WL3013867 (C.D. Cal. June 13, 2013)……………………11

*EEOC v. Kovacevich "5" Farms*,
   No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ...................... 15

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ......................................... 8-9

*Frlekin v. Apple Inc.*,
   8 Cal. 5th 1038 (2020) ......................................... 11

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ......................................... 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................... 8, 16

*Hartstein v. Hyatt Corp.*,
   No. CV-204874-DSFJPRX, 2021 WL 2497926 (C.D. Cal. Mar. 19, 2021) ...................... 11

*Heredia v. Eddie Bauer LLC*,
   No. 16-CV-06236-BLF, 2020 WL 1492710 (N.D. Cal. Mar. 27, 2020)................................ 11

*In Re Am. Bank Note Holographics*, *Inc.*,
   127 F.Supp.2d 418 (S.D.N.Y. 2001)……………………………………………………13

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

*In Re Armored Car Antitrust Litig.,*
   472 F. Supp. 1357 (N.D. Ga. 1979)……………………………………………………12

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.,*
   289 F.R.D. 526 (N.D. Cal. 2012)……………………………………………………11

*In Re Four Seasons Secs. Laws Litig.,*
   58 F.R.D. 19 (W.D. Okla.1972)……………………………………………………12

*In re Immune Response Secs. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)…………………………………………...10

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)……………………………………………12

*In re Syncor ERISA Litig.,*
   516 F.3d 1095 (9th Cir. 2008) ..................................................................... 9

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002) ................................................................... 12

*Kilbourne v. Coca-Cola Co.,*
   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)……………………11

*Langford v. Devitt,*
   127 F.R.D. 41 (S.D.N.Y. 1989) ................................................................ 14

*Linney v. Cellular Alaska P'ship.,*
   151 F.3d 1234 (9th Cir. 1998) .................................................................. 12

*Mandujano v. Basic Vegetable Products, Inc.,*
   541 F.2d 832 (9th Cir. 1976) ............................................................. 13, 14

*Mazza v. Am. Honda Motor Co., Inc.,*
   666 F.3d 581 (9th Cir. 2012) ................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ........................................................ 9, 12, 14

*7-Eleven Owners for Fair Franchising,*
   85 Cal.App.4th 1135 (2000) ..................................................................... 12

*Sherman v. Schneider Nat'l Carriers, Inc.,*
   No. CV 18-08609-AB (JCx), 2019 WL 3220585 (C.D. Cal. Mar. 6, 2019)……………………11

The Law Office of Daniel Feder ◆ San Francisco, CA 94104

235 Montgomery Street, Suite 1019

*Soc. Sers. Union. Local 535 v. Cnty. of Santa Clara*
    609 F.2d 944 (9th Cir. 1979) ................................................................ 16

*Tellez v. Ulta Salon, Cosms. & Fragrance, Inc.*,
    No. 18CV2480-CAB-LL, 2020 WL 619588 (S.D. Cal. Feb. 10, 2020)...........................12

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................ 14

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................... 9, 13

*York v. Starbucks Corp.*,
    No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ...................... 11

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................ 17

**<u>Rules</u>**

Fed. R. Civ. P. 23.................................................................................. passim

**<u>Treatises</u>**

Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement
§ 21.61 (4th ed. 2004) ................................................................................. 8

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

## I.     INTRODUCTION

Plaintiff Shaquille Stewart Alexander, individually and on behalf of all others similarly situated, and Defendants Saks & Company, LLC and Saks Incorporated (collectively, "Defendants") entered into a proposed Settlement memorialized in the proposed Class, Collective and Private Attorney General Act of 2004 ("PAGA") Action Settlement Agreement ("Settlement") to resolve claims brought on behalf of a subset of current or former non-exempt employees who worked for Defendants.[2] The Settlement, which resolves numerous wage and hour claims on behalf of approximately 1,080 Class Members and which are unlikely to have been prosecuted as individual actions, provides for a total non-reversionary settlement of $375,000.

The Court granted preliminary approval of the Settlement on August 1, 2022. *See* ECF 79. Following the Court's order, notice of the Settlement was sent to the Class Members on August 22, 2022. Declaration of Stephen Gomez ("Gomez Decl."), ¶ 9. The exclusion and objection period will expire on October 21, 2022. *Id*. To date, the Class Members' response has been overwhelmingly positive. Indeed, no objections have been filed, and no Class Members have opted out of the Settlement. *Id*. at ¶¶ 13-14.

The Settlement is fair, reasonable, and adequate in all respects. Accordingly, Plaintiff respectfully submits that the Settlement should be finally approved.[3]

## II.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.     The Pleadings

On April 1, 2021, Plaintiff filed his initial Complaint in the United States District Court for the Northern District of California, which asserted Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and California state law claims. Dkt. No.1. Plaintiff alleges that Defendants' current and former non-exempt employees experienced wage and hour violations. In particular, Plaintiff

---

[2] The Settlement Agreement was filed as Exhibit 1 to the Declaration of Eric Lechtzin in Support of Plaintiff's Motion for Preliminary Approval of Settlement. *See* ECF 68-2.

[3] In a separate motion filed correspondingly, Plaintiff seeks approval of an award of attorneys' fees, expenses, and a service award for the Named Plaintiff. Pursuant to the Northern District of California's Procedural Guideline for Class Action Settlements, this brief does not repeat that request and corresponding background information.

alleges that the employees engaged in pre-and post-shift off-the-clock work, including but not limited to waiting for and undergoing security inspections and pre-shift meetings. *Id*. On May 19, 2021, Defendants filed a motion to dismiss under Rule 12(b)(2) and 12(b)(6), which was granted by the Court with leave to amend.

On September 17, 2021, Plaintiff filed the First Amended Complaint, adding personal jurisdiction allegations concerning Saks Incorporated, as well as addressing the Court's finding that Plaintiff had failed to sufficiently allege overtime violations under the FLSA. Dkt. No. 44. On October 1, 2022, Defendants filed a renewed motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6). Dkt. No. 45. The Parties completed briefing on the motion to dismiss, on November 16, 2021. Dkt. Nos. 52, 55.

**B.    Mediation and Informal Discovery**

The Parties agreed to participate in private mediation, and on November 23, 2021, the Court granted the Parties' Stipulation for a Temporary Stay and Tolling of the Action to explore the possibility of a global settlement in light of the pending settlements of two related actions against Defendants involving wage and hour claims: *Alfreda Lewis v. Saks South Coast Leasehold, LLC; Saks & Company, LLC*, Case No. 30-2020-01143164-CU-OE-CXC, currently pending in Orange County Superior Court, and *Maxwell Esposito v. Saks & Company,* LLC, currently pending at Los Angeles Superior Court – Santa Monica, Case No. 20SMCV01252. Declaration of Eric Lechtzin ("Lechtzin Decl."), ¶ 5.

Plaintiff Lewis alleged violations of California Labor Code §§ 200-203, 204, 226(a), 226.7, 510, 512, 1174, 1194, and 2802 and provisions of the Industrial Wage Commission ("IWC") Wage Order No. 7-2001. Plaintiff Esposito similarly alleged violations of California Labor Code §§ 200-203, 204, 226(a), 226.7, 510, 512, 1174(d), 1182.12, 1194, 1197-1198, 2800, 2810.5, and 2802 and provisions of the IWC Wage Order No. 7-2001.

At the time of the Parties' mediation, the parties in *Lewis* and *Esposito* already had signed a Settlement Agreement on behalf of a class of "all Saks non-exempt employees who worked in sales positions with the following job titles and associated codes: Sales Associate (SAL102 or

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

SAL104) and Brand Ambassador (SSTl00) at Saks Fifth Avenue Stores in California during the Class Period and who do not timely and properly submit an election to Opt-Out." Lechtzin Decl., ¶ 6.

For purposes of preparing for mediation with Mediator Paul Grossman, the Parties engaged in informal pre-mediation discovery, which included Defendants' production of a summary of payroll data and dates of employment for Class Members, as well as Defendants' policies. Lechtzin Decl., ¶ 7. Plaintiff retained an expert who meticulously reviewed the materials and calculated a damage estimate based on Plaintiff's claims in the case. *Id.*, ¶ 12.

After Plaintiff and his expert analyzed the data provided by Defendants and prepared detailed damage analysis, the Parties submitted detailed mediation statements, which included arguments and analyses of the strengths and weaknesses of their respective positions. The Parties attended a full day mediation on February 23, 2022, before Mr. Grossman, a highly respected mediator. *Id.*, ¶ 8. The Parties were successful in reaching a settlement in principle on February 23, 2022, the terms of which were set forth in a Mediator's Proposal. *Id.* The Parties have since worked on finalizing the terms of this Settlement Agreement and corresponding documentation. The Settlement Agreement was fully executed on June 1, 2022. *Id.*, ¶ 9.

### C.    Preliminary Approval of the Settlement

Plaintiff filed his Motion for Preliminary Approval on June 2, 2022. *See* ECF 68. Following the hearing on July 28, 2022, the Court issued an order on August 1, 2022 granting the Preliminary Approval Motion, but modifying it to reflect that any *cy pres* funds would go only to UC Berkeley Labor Center. The Court preliminarily found "that the proposed settlement described in the Agreement (including the monetary provisions, the plan of allocation, the release of claims, the proposed award of attorneys' fees and costs and the Class/PAGA Representative Service Award) is reasonable [and] that settlement on the terms in the Agreement is fair, reasonable, and adequate and that such settlement is in the best interests of the Class." The Court further approved the Notice of Settlement and authorized the proposed notice plan. The Court also authorized the filing of a Second Amended Complaint, which Plaintiff filed on August 2, 2022. ECF 80.

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

**D.      Notice of Settlement and Response of Class Members**

Following the entry of the Court's preliminary approval order, the Settlement Administrator, Simpluris, received the Class member information from Defendants on August 12, 2022. Gomez Decl. ¶ 8. This data contained the names, last known mailing addresses, workweeks and other personal information for 1,080 Class members.[4] *Id*. Simpluris sent the Notice of Settlement to the 1,080 Class Members on August 21, 2022 via U.S. Mail. *Id*. at ¶ 9. Simpluris also put Settlement documents on a website. *Id*. at ¶5. Simpluris also established a toll-free call center for telephone inquiries from Class Members. *Id*. at ¶ 4.

The Notice informed Class Members of: the Settlement terms; their expected share; the October 21, 2022 deadline to submit objections, requests for exclusions, or disputes; the November 17, 2022 final approval hearing; and that Plaintiff would seek attorneys' fees of up to 33 1/3% of the Total Settlement Amount, costs of up to $30,000, and the $5,000 service award to Plaintiff. *Id*. at ¶ 7; *see also* Ex. B to the Gomez Decl.

As of October 6, 2022, 71 notices had been returned to Simpluris as undeliverable. *Id*. at ¶ 11. Simpluris performed skip-tracing to identify current addresses, and 15 hard-copy notices remain undelivered after remailing. *Id*. at ¶¶ 10-11. The deadline for Class Members to opt-out, object, and dispute their recorded workweeks expires October 21, 2022.

To date, not a single objection has been filed and not a single Class Member has elected to opt out of the Settlement. *Id*.; Lechtzin Decl. ¶ 4. Following final approval of the Settlement, Simpluris will issue checks to the Class Members under the Settlement.

**E.      Final Approval of the Settlement**

The Final Approval Hearing is currently scheduled for November 17, 2022. With this Motion, Plaintiff asks the Court to grant final approval of this Settlement. Following an order by the Court on this Motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating Class Members

---

[4] At preliminary approval, the total number of Settlement Class Members was estimated at approximately 1,042. In the finalized list provided by the Defendants to the Settlement Administrator, the total number of Class Members is 1,080.

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ San Francisco, CA  94104
235 Montgomery Street, Suite 1019

1  for their Settlement Awards.

2  **III.    TERMS OF THE SETTLEMENT**

3    **A.    Basic Terms and Value of the Settlement**

4        Defendants have agreed to pay a non-reversionary Total Settlement Amount of $375,000 to

5  settle all aspects of the case. Settlement Agreement ("SA"), ECF 68-2, ¶ 44 . The "Net Settlement

6  Amount," which is the amount available to pay settlement awards to Class Members is defined in

7  the Settlement Agreement as the amount remaining after the payment of the Class Counsel Fee and

8  Expense Award (fees of up to 1/3 of the Total Settlement Amount, or $124,987.50), plus costs not

9  to exceed $30,000;[5] any service award to the Plaintiff in recognition of his effort and work (up to

10  $5,000); Settlement Administrator's fees and costs currently projected to be approximately

11  $14,000; and the PAGA funds of $20,000, of which $15,000 in payment will be made to the

12  California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA, and $5,000

13  will go to PAGA Cohort Members as approved by the Court.[6] *Id*. at ¶ 24.

14        The Total Settlement Amount is a negotiated amount that resulted from substantial arms'

15  length negotiations and significant investigation and analysis by Plaintiff's Counsel. Plaintiff's

16  Counsel based their damages analysis and settlement negotiations on discovery, including the

17  payroll data. Lechtzin Decl. ¶ 10. Utilizing an expert, Plaintiff's Counsel analyzed the data for all

18  of these employees, which was then used in conjunction with amounts of unpaid time to determine

19  estimated damages for unpaid wages and overtime violations.

20    **B.    Class and Collective Definitions**

21        An individual is a member of the Class under the proposed Settlement if he or she belongs

22  to any of the following:

23  —————————————

   [5] In their Motion for an Award of Attorneys' Fees and Expenses and Class Representative Service
24  Award filled concurrently with this Motion, Class Counsel requests up to 27.5% of the Total
   Settlement Amount, for a total of $103,125, plus reimbursement of litigation costs of $23,800.09.
25
   [6] Eighty percent (80%) of the Net Settlement Amount will be allocated as penalties and interest,
26  and twenty percent (20%) of the Net Settlement Amount will be allocated as wages.

27

28

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

- The "Class" means all current or former non-exempt employees who worked for Saks & Company, LLC (the "Company"), at a Saks Fifth Avenue retail store in California, during the Class Period and excludes all individuals identified by and included in the settlement class(es), unless they opt-out, as approved by the court(s) in *Alfreda Lewis v. Saks South Coast Leasehold, LLC; Saks & Company, LLC*, Case No. 30-2020-01143164-CU-OE-CXC, currently pending in California Superior Court, County of Orange and *Maxwell Esposito v. Saks & Company, LLC*, currently pending in California Superior Court, County of Los Angeles - Santa Monica, Case No. 20SMCV01252 ("Lewis/ Esposito Settlement"). However, individuals who are members of the Lewis/Esposito Settlement but who also worked for the Company at a Saks Fifth Avenue retail store in California during the Class Period in a role other than Sales Associate (SAL 102 or 104) and Brand Ambassador (SST100), may participate in both settlements. The Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

- The "Collective" means all current or former non-exempt employees who worked for Saks & Company, LLC (the "Company"), at a Saks Fifth Avenue retail store in California, during the Collective Period and excludes all individuals identified by and included in the Lewis/ Esposito Settlement. However, individuals who are members of the Lewis/Esposito Settlement but who also worked for the Company at a Saks Fifth Avenue retail store in California during the Collective Period in a role other than Sales Associate (SAL 102 or 104) and Brand Ambassador (SST100), may participate in both settlements.[7]

**C.    Allocation and Awards**

Class Members will each receive a settlement award check without the need to submit a claim form. SA, ¶ 65(c). Each Class Member's settlement share will be determined based on the

---

[7] The Settlement Agreement also includes a PAGA Cohort, which comprises Class Members who worked during the period of April 1, 2020, through preliminary approval of the Settlement.

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

total number of weeks that the respective Class Member worked for Defendants during the limitations period. SA, ¶ 65(a), (b). Specifically, the total workweeks for all Class Members during the Class period will be divided into the Net Settlement Sum to calculate a workweek value. The Workweek value will then be multiplied by each Settlement Class Member's total number of workweeks to determine each Settlement Class Member's Individual Settlement Award, after deducting any employee side tax withholdings or deductions. *Id*.

Class Members who worked in California at any time during the period from April 1, 2020 through preliminary approval of the Settlement Agreement will also receive a pro rata portion of the PAGA Fund Amount ($5,000), based on the number of workweeks they were employed by Defendants from April 1, 2020 through preliminary approval of the Settlement Agreement. SA, at ¶ 66(a), (b).

The Settlement Notice provides the estimated pre-tax amount of the Class Member's Individual Settlement Award and number of workweeks for each Class Member, assuming full participation in the settlement. Settlement Award and eligibility determinations are based on employee workweek information that Defendants provided to the Settlement Administrator; however, the Settlement Administrator's determination – not Defendants – will be binding. SA, ¶ 75.

Settlement Awards will be paid to Class Members and PAGA Cohorts by the Settlement Administrator within ten calendar days of receipt of the Total Settlement Amount. SA, ¶ 79. While the Settlement Agreement stated that "[a]ny uncashed check funds remaining after the checkcashing deadline will be paid to one or more agreed *cy pres* recipients approved by the Court," (SA, ¶ 81), the Court indicated in its Preliminary Approval Order that the University of California Berkeley Labor Center would be the sole *cy pres* recipient. ECF 79. Upon completion of administration of the Settlement, the Settlement Administrator shall provide a written declaration under oath to certify such completion to the Court and counsel for all Parties as ordered by the Court. SA, ¶ 82. Within 21 days after the final distribution to the cy pres recipient, Plaintiff will file a Post-Distribution Accounting in accordance with the Northern District's Procedural

Guidance.

### D.    Scope of Release

The release contemplated by the Settlement will release all claims in connection with the lawsuit that were or could have been asserted in Plaintiff's complaints based on the facts alleged in support of Plaintiff's specific causes of action.[8] SA, ¶ 36. Upon the Effective Date, Class Members will be deemed to have released such claims based on California law. Additionally, only those Class Members who cash or deposit their Settlement Award check will release their FLSA claims. SA, ¶ 65(d).

After the Effective Date, Plaintiff, on behalf of himself, the State of California, and all PAGA Cohort Members, will have released the Released Parties from all claims for civil penalties under Labor Code sections 2698, *et seq.*, with respect to the Released Claims, as set forth in the PAGA Release, for the entirety of PAGA Period. SA, ¶ 58.

## IV.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Settlement

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which any objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Federal law strongly favors and encourages settlements, especially in class actions. *See*

---

[8] With respect to Plaintiff individually, the Release excludes all claims pled in the separate action entitled *Alexander v. Saks & Company, LLC*, Superior Court of California, County of San Francisco, Action No. CGC-20-587873, because Plaintiff has settled and will release all such claims in a separate settlement agreement. *Id.*

The Law Office of Daniel Feder    235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

*Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and grant final approval to the Settlement.

### 1. The terms of the Settlement are fair, reasonable, and adequate

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement. The Settlement was reached after extensive investigation and research, thorough calculations and risk evaluation, informal exchanges of data

and documents—including an evaluation of Class Members' payroll data—and an exchange of information required to evaluate potential defenses and damages. With the information produced by Defendants, and additional information provided by Defendants during the mediation, it was sufficient to permit Plaintiff's counsel to adequately evaluate the Settlement. Notably, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Plaintiff calculated that unpaid wages owed, based on the assumption of 50 minutes off the clock in each workweek, would total approximately $4.0 million for Settlement Class Members. The *maximum* potential damages and penalties available using these favorable assumptions for the putative class were calculated to be $4,015,596 for unpaid work hours,[9] $3,088,188 for waiting time penalties, and $2,573,300 for wage statement claims, plus PAGA penalties (which would be minimal, based on the fact that the Court might deem them duplicative of class action damages). Lechtzin Decl. ¶ 12. The average recovery is approximately $198 per Class Member (this amount divides the net recovery by total number of Class Members). Lechtzin Decl. ¶ 20; Gomez Decl. ¶ 16. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

Based on documents and information produced by Defendants in discovery, in preparation for mediation and during settlement negotiations, Plaintiff's counsel estimated the maximum potential liability that may be owed to the putative class, assuming Plaintiff and the Class were able to survive Defendants' motion to dismiss, obtain an order certifying the class, survive summary judgment, and prove at trial that Saks was liable during the Class Period. However, this figure is subject to substantial discount for multiple reasons. First, Defendants contend that their policies and practices have not and do not violate any wage and hour laws and further contend that their compensation practices and wage statement policies comply with all aspects of California and federal law. Lechtzin Decl., ¶ 15. Further, Defendants presented video evidence, which showed

---

[9] Plaintiff's damages also included an additional $3,435,135 in damages under the assumption that Plaintiff and Class members were not paid for daily meetings. However, Defendants provided evidence that tended to contradict these allegations.

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

that the security checks, which are the subject of this action, lasted less than a minute. *Id.* ¶ 16. Defendants also raised challenges to Plaintiff's claims proceeding on a class or manageable representative basis given the inherent individualized inquires required to adjudicate off-the-clock claims.[10] Additionally, Plaintiff's derivative claims are subject to a good faith argument and, as such, the claims may not be recoverable. Indeed, *Frlekin v. Apple Inc*., 8 Cal. 5th 1038 (2020), which held that time spent undergoing the security clearance could be compensable time under California law, was not decided until 2020, which is after Plaintiff was no longer employed by Saks. Moreover, Defendants asserted that Plaintiff's wage statement claim would fail based on caselaw dismissing such claims where the wage statements accurately reflect the actual amount paid. *See*, *e.g.*, *Hartstein v. Hyatt Corp.*, No. CV204874DSFJPRX, 2021 WL 2497926, at *4 (C.D. Cal. Mar. 19, 2021) (dismissing wage statement claims as an impermissible double recovery where the plaintiff did not allege the wage statements inaccurately documented the amount of money she actually received); *Sherman v. Schneider Nat'l Carriers, Inc.*, No. CV 18-08609-AB (JCx), 2019 WL 3220585, at *5 (C.D. Cal. Mar. 6, 2019) ("Plaintiff's opposition implicitly concedes that the wage statements accurately stated the wages actually paid. Accordingly, the wage statements do not violate § 226(a) even if the amount paid was incorrect.").

Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). While Plaintiff believes in the strength of his claims, the risks to Class Members of continued litigation were significant. This action was poised for a contentious pre-certification law and

---

[10] Off-the-clock claims are difficult to certify for class treatment, given that the nature and amount of the off-the-clock work may vary based on the individualized circumstances of the worker. *See, e.g.*, *Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 1492710, at *1 (N.D. Cal. Mar. 27, 2020) (noting decertification of the class based on variations in the employees' experiences regarding exit inspections); *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011)

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

motion work which would have consumed a substantial amount of attorney time, court time, and depending on the motion and the result, potential appeals. Had the Parties not settled, the litigation would likely have been risky, protracted, and costly. Lechtzin Decl., ¶¶ 18-19. The Parties would also have had to engage in additional formal discovery (assuming Plaintiff's complaint survived Defendants' motion to dismiss), brief a class certification motion, as well as a conditional certification motion (and possible brief in opposition of decertification), followed by potential summary judgment, *Daubert* motions, motions *in limine*, and then trial. Each stage would have added risk and necessarily imposed delay before relief could be provided to the Class. By settling now, the remedy to Class Members for alleged labor code violations becomes imminently available.

Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See*, *e.g.*, *Officers for Justice*, 688 F.2d at 623; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages). Moreover, at least one other court has approved a similar settlement for cases with similar claims and defenses. *See Tellez v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 18CV2480-CAB-LL, 2020 WL 619588, at *6 (S.D. Cal. Feb. 10, 2020) (granting approval of settlement in which class members received an average estimated payment of approximately $44 for claims including failure to pay overtime, failure to timely pay wages and failure to provide accurate wage statements, and defendant had similar defenses to those at issue here).[11]

---

[11] It is equally well-settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See*, *e.g.*, *7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1135, 1150 (2000) (*citing Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) with approval). "Notably, [a court must consider whether] a substantial portion of

The Law Office of Daniel Feder

235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

### 2. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Wren*, 2011 WL 1230826, at *14 (approving settlement reached through arms-length negotiations supervised by an experienced mediator). Furthermore, where counsel is well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10 ("Class Counsel's favorable opinion of the terms of the settlement supports approval…"); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Lechtzin Decl., ¶ 21. The Parties participated in a full day mediation before Paul Grossman, who is a skilled mediator with many years of experience mediating employment matters. *Id*. The Parties then spent several months negotiating the long form settlement agreement, with back-and-forth correspondence related to the terms and details of the Settlement. *Id*.

### 3. Class Members approve of the Settlement

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). Courts have found that a relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving the settlement in large part

---

Defendant's total potential liability exposure would not translate into awards to class members at all. . . . [For example, where] the estimated potential liability is comprised of PAGA penalties, [] these large penalties do not necessarily translate into take-home awards for members of the class...." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015).

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

1    because only 3% of the apparent class had objected to the settlement).

2        To date, no Class Members have objected to the Settlement, and no Class Members have

3    opted out of the Settlement. *See* Lechtzin Decl. ¶ 4. This shows widespread support for the

4    Settlement among Class Members and gives rise to a presumption of fairness.

5        **B.    The Best Practicable Notice was Provided to the Class Members in Accordance
             with the Process Approved by the Court**

6

7        Pursuant to the Court's August 1, 2022, preliminary approval order, Simpluris sent the

8    Court approved notice of settlement to the Class members in accordance with the terms of the

9    Settlement. Lechtzin Decl., ¶ 3; Gomez Decl., ¶¶ 7-9. The Notices were sent via U.S. Mail and the

10   Settlement and accompanying court documents were posted on a website where Class Members

     could view them. Gomez Decl. ¶¶ 5, 9.

11

12       Notice of a class action settlement is adequate where the notice is given in a "form and

13   manner that does not systematically leave an identifiable group without notice." *Mandujano v.*

14   *Basic Vegetable Products, Inc.*, 541 F.2d at 835 (9th Cir. 1976). The notice should be the best

15   "practicable under the circumstances including individual notice to all members who can be

16   identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th

17   Cir. 1993). Sending individual notices to settlement class members' last-known addresses

18   constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir.

19   1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail

     has been approved repeatedly as sufficient notice of a proposed settlement.").

20

21       The Settlement Administrator followed the procedures set forth in the Court-approved

22   notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice.

23   *See supra* Section II.D. Ultimately, of the 1,080 notices distributed via U.S. Mail, 15 notices

24   (1.39%) are undeliverable following skip-tracing. Gomez Decl. ¶ 11.

25       Accordingly, the notice process satisfies the "best practicable notice" standard.

26       **C.    The Class Representative Service Award is Reasonable**

27       In approving the Settlement, the Court must determine whether "the settlement, taken as a

28   whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In

addition to the terms and details of the Settlement discussed above, the Settlement also establishes a service award of up to $5,000 for Plaintiff. Plaintiff sets forth his argument in support of the service award in full in his Motion for an Award of Attorneys' Fees and Expenses and Class Representative Service Award, which is being filed concurrently with this Motion. Plaintiff does not repeat those arguments here. The Court should grant final approval to the requested service awards as reasonable.

**D.      The Requested Attorney's Fees and Expenses are Reasonable**

Likewise in evaluating the Settlement, the Court should evaluate Plaintiff's request for attorneys' fees and costs pursuant to the terms of the Settlement. In their fee motion, Class Counsel request up to 27.5% of the Total Settlement Amount, for a total of $103,125, plus reimbursement of litigation costs of $23,800. Plaintiff sets forth his arguments in support of the fee and costs request in full in his Motion for an Award of Attorneys' Fees and Expenses and Class Representative Service Award filed concurrently with this Motion. Plaintiff does not repeat those arguments here. The Court should grant final approval to the requested fees and costs as reasonable.

**E.      The Class Meets the Requirements for Class Certification**

In its August 1, 2022 preliminary approval order, the Court granted conditional certification of the Class. ECF 79.[12] Now that notice has been effectuated, the Court should finally certify this Class in its Final Approval Order.

**a.   The Class Satisfies the Requirements of Rule 23(a)**

The proposed Class satisfies all the requirements of Rule 23(a).

<u>Numerosity</u>: The Class is sufficiently numerous that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See, e.g.*, *EEOC v. Kovacevich "5" Farms,* No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed Class has approximately 1,080

---

[12] With regards to the FLSA Claims, this Court has found that the FLSA claims may be released upon the cashing of an individual's settlement check, and that the settlement of the FLSA claim is a fair and reasonable resolution of a bona fide dispute. ECF 79.

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

members, and easily meets this standard.

Commonality: Commonality is satisfied because there "are questions of law and fact common" to the proposed Class. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Here, as discussed in greater detail below in the discussion of predominance, there are a number of questions that can be resolved with respect to the entire class. *See infra*.

Typicality: The typicality requirement of Fed. R. Civ. P. 23 (a)(3) is satisfied because Plaintiff's claims are typical of the claims asserted on behalf of the Class. Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff's claims arise out of the same factual and legal circumstances as the claims of other Class Members: like all Class Members, the Named Plaintiff was subject to the same alleged illegal policies and practices.

Adequacy: Plaintiff has fairly and adequately protected the interests of the class and will continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020; *Soc. Sers. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir. 1979). Here, Plaintiff shares an interest to prosecute the claims on behalf of himself and the Class, has vigorously prosecuted the claims, and has no conflicts of interest with Class Members. In addition, Class Counsel has substantial experience in class action and employment litigation, including wage and hour class actions. Lechtzin Decl. ¶ 2; Declaration of Daniel Feder in Support of Plaintiff's Motion for Preliminary Approval of Settlement (ECF 68-4) ¶¶ 2-3.

**b.    The Class Satisfies Predominance and Superiority**

The Class satisfies the requirements of Fed. R. Civ. P. 23 (b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." First, the Class satisfies the predominance requirement, which examines whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

16

F.3d at 1022. Here, Plaintiff contends the common questions raised in this action predominate over any individualized questions. The Class is cohesive because resolution of Plaintiff's claims hinge on the uniform policies and practices of Defendants. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies and practices.[13]

Further, Plaintiff contends the class action mechanism is a superior method of adjudication compared to the prospect of a multitude of individual lawsuits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the Class Members would not have a strong interest in controlling their individual claims. The action involves hundreds of workers with very similar, but relatively small, claims for monetary injury. If the Class Members proceeded on their claims as individuals, their many individual lawsuits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation to an extent that would never be required in a class proceeding. Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability "is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties ensures that workers receive redress for their

---

[13] Although the amount of time worked off-the-clock may vary, these are damages questions and should not impact class certification. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should certify the Class for settlement purposes.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion for final approval and enter the accompanying proposed Order.

Date: October 7, 2022                    Respectfully Submitted,

                                         */s/ Eric Lechtzin*
                                         Eric Lechtzin (SBN: 248958)
                                         **EDELSON LECHTZIN LLP**
                                         411 S State Street, Suite N-300
                                         Newtown, PA 18940
                                         Telephone: (215) 867-2399
                                         Facsimile: (267) 685-0676
                                         elechtzin@edelson-law.com

                                         DANIEL FEDER (SBN 130867)
                                         **LAW OFFICES OF DANIEL FEDER**
                                         235 Montgomery Street, Suite 1019
                                         San Francisco, CA 94104
                                         Telephone: (415) 391-9476
                                         Facsimile: (415) 391-9432
                                         daniel@dfederlaw.com

PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104